The next case, number 152145, United States v. Edwin Maldonado-Burgos Good morning, Your Honors, and may it please the Court, John Taddy for the United States. The District Court erred when it found that Puerto Rico is not a territory or possession of the United States for purposes of 18 U.S.C. section 2421 for three principal reasons. First, the District Court did not properly weigh the precedential impact of Crespo and other First Circuit cases holding that Puerto Rico is a territory for purposes of section 2421. Second, the District Court misconstrued the impact of Public Law 600 and the establishment of the Puerto Rico Constitution. And third, the District Court did not consider the illogical results that flow from its conclusion that Puerto Rico is not a territory under section 2421. First, Crespo and its progeny are binding precedent, and they are consistent with Congress's stated aim for the Mann Act. When Congress first passed the Mann Act in 1910, that passage was accompanied by two reports from the House of Representatives and from the Senate, and both of them said the same thing. Both of them made it perfectly clear that the terms of the Mann Act apply in the territories without regard to the crossing of district, territorial, or state lines, and that they apply in the territories to the same extent as they apply in interstate commerce. Your problem is Cordova. Why is that different? Well, Your Honor, Cordova 1 was a case that was specifically about the Sherman Act, and it only addressed the Sherman Act. It did not address any other statutes. And it also relied on an interpretive principle that has not been applied to cases outside of Cordova, either before Cordova or since Cordova. But it's not been rejected. I mean, it's a pretty major jurisprudential discussion of how to approach various laws that apply to Puerto Rico in the wake of the 1952 legislation. We would have to reject that mode of analysis, would we not? No, Your Honor. First of all, this Court stated in Justino Mercado and several cases prior, dating all the way back to Shelco in 1937, that whether Puerto Rico is a state or a territory under a particular statute depends on the character and aim of the Act. And what this Court does first is it looks at the language of the statute to see whether or not it specifically mentions Puerto Rico. So what's different then in the Sherman Act as opposed to this Act? Because Cordova found precisely the opposite of what you're urging that we find here. Well, there were really two modes of analysis that were in plain Cordova. First, Cordova stated that it was looking at the intent of the framers of the Sherman Act and said that if they were aware of the changes that occurred in Puerto Rico in 1952, how would they have intended to have treated Puerto Rico? And they looked at this Sherman Act, and they said that the Sherman Act ceases to apply to local affairs once a territory becomes a state, that Puerto Rico, as a result of the 1952 Act, experiences an autonomy that's comparable with the state's, and that there was no countervailing intent within the Sherman Act, as articulated by the drafters, that said that it wanted to police local conduct. But isn't criminal activity traditional part of the health and welfare responsibilities of the states? It is, yes, Your Honor. But this court in Crespo explicitly rejected that argument. There was an argument that was made in Crespo. But that's before Puerto Rico achieved this unique commonwealth status. Well, it is before 1952, yes, Your Honor. But as this court recently stated, albeit in dicta, in Carasquillo-Penaloza back in June 2016, Crespo is still good law and is still binding precedent. Now, that was, of course, in dicta, but that was an indication that the precedent that was articulated in Crespo, that Puerto Rico is a territory for purposes of the Mann Act, is still good law and is still binding on this court. Come back to it. You still haven't – I haven't heard word, one, about why, for example, the statutory history and purposes of this Act can be distinguished from those of the Sherman Act in a way that's relevant under Cordova, nor have I heard why the rationales put forward in Cordova wouldn't apply here equally. So we understand your point regarding Crespo, but I think one of the things you're hearing is that doesn't close the book necessarily for you. You need to distinguish Cordova. Yes, Your Honor, of course. I haven't heard that yet. Yeah. So the first point about the Sherman Act and the intent of the Sherman Act, about it ceasing to apply locally, the purposes that were articulated by Congress back in the 1909 and 1910 legislation, as this court held in Crespo and as the Supreme Court held in Beach, made it explicitly clear. So you have to look at that articulation that was present in the Mann Act, which in Cordova, the Court of Appeals did not recognize such an intention. And the second mode of interpretation that was employed in Cordova was this idea that Puerto Rico had very robust antitrust laws at the time that the Cordova case came up in 1981. And quoting from that decision, on page 44 of Cordova, the Court said, there is a lack of any strong reason why the Sherman Act should apply to purely local matters in Puerto Rico and not in the states. As the District Court in a companion case to this in Mercado Flores recognized, Section 2421 is a very robust criminal code. But not with respect to human trafficking, Your Honor. And two independent studies, well, one independent study from the Ricky Martin Foundation, which addresses human trafficking and from the U.S. State Department, indicate that human trafficking is a pervasive problem within Puerto Rico. But isn't Puerto Rico law must make prostitution illegal, doesn't it? It does make prostitution illegal. And it makes child abuse, which is what's here, certainly makes child abuse illegal. Well, the facts of this case are not the only types of cases that can be prosecuted under the Mann Act, Your Honor. There are a legion of cases that could incorporate trafficking of individuals from one end of the island to another. And in addition, with respect to children, which you mentioned, there's no dispute that Section 2423 applies to Puerto Rico. You haven't heard defendant make that argument. There's no holding to the contrary. This would create a gap in enforcement for trafficking of child sexual abuse, excuse me, for trafficking of child sexual abuse and for trafficking broader. There would be a dissonance between the application of that lesser included statute and Section 2421, which is the greater included statute. But there are differences in the antitrust laws between the federal antitrust law and the states. The states may decide to make the indirect purchasers responsible. The Sherman Act doesn't. I mean, the whole notion here of that we're addressing presumes that Congress has made a rule only for interstate and has left the interstate by itself. And then the question we have here is, for this purposes, do we look at Puerto Rico like that, a state or not? And Cordova seems to say that with the 52 legislation, Congress's intent was to leave matters like this to Puerto Rico. Well, Your Honor, there are additional issues with Cordova, particularly the fact that it didn't consider the import of the Federal Relations Act, specifically the Federal Relations Act Savings Clause. And there's no denying that there was some tension between the holding in Cordova and holdings in other cases such as United States v. Quinonez, Acosta-Martinez in 2001, and Moreno-Rios back in 1958, that with the passage of the Puerto Rico Federal Relations Act and the inclusion of the Savings Clause, which indicated that laws that applied to Puerto Rico, federal laws, prior to 1952, continue to apply to Puerto Rico after 1952 in the same fashion. There's some tension there, particularly given this Court's holding in Crespo, given the Supreme Court's holding in Beach, that Congress made it plain when it passed the Mann Act that it explicitly intended for interstate trafficking or interterritory trafficking to apply. That case addressed the District of Columbia, but the same principles are present. Congress has plenary authority to regulate conduct within the territories. The Supreme Court noted that in Beach. It faced the argument, as the panel has mentioned, that there may be robust laws regulating certain conduct. In that case, there were robust laws regulating sex trafficking within the District of Columbia. But the Supreme Court said that it was up to Congress, not the courts, to determine whether there was adequate protection. And that principle applies here as well. It hasn't, you know, you would have thought maybe there'd be an argument that, look, the Constitution tells us what a state and a territory is, and there isn't a sort of. But in Calero-Toledo, the U.S. Supreme Court itself deemed Puerto Rico to be a state for purposes of the Three-Judge Review Act. Yes, Your Honor. So we've got, you know, Cordova, and then with our own circuit adopting a mode of analysis. Then we've got Cordero. Why would we want to not have that same? I mean, what practical difference is there? Well, the practical difference, Your Honor, is that if you embrace a mode of statutory interpretation that does away with the presumption that has been articulated in cases like Moreno-Rios and Quinonez and Acosta-Martinez, there's going to be relitigation of many statutes that apply to Puerto Rico after. This is not the first case in which a defendant has argued that Puerto Rico is a commonwealth, and therefore statutes addressing territories do not apply, or that Puerto Rico is not a state for the purposes of particular statutes like the Three-Judge Court Act, and therefore there's no federal jurisdiction. This Court has addressed questions like this many times. Well, that's coming anyway. I'm sorry, Your Honor. What we do, that's coming. Well, this Court could clarify that the doctrine here is that in line with the Federal Relations Act Savings Clause, statutes that apply to Puerto Rico prior to 1952 continue to apply to Puerto Rico in the same fashion after. And that may dissuade some of that litigation. And on that point, specifically – But with the FRA, we've also got the provision that says all federal laws or parts of laws inconsistent with the provision of the FRA are hereby repealed. So we've got the countervailing FRA provision. Well, it says, Your Honor, laws that are not locally inapplicable. And in, I believe it was, Acosta-Martinez, I apologize if I'm incorrect, the Court said that if that was the federal death penalty case, that's the case I'm thinking of, that situations in which Congress has made its intent explicitly clear, as it has in the Mann Act, dating all the way back to 1910, that Congress does not need to consider that locally inapplicable portion of the Federal Relations Act. And in addition to that, just briefly, I wanted to address two other cases that Judge Cayetano was referencing in terms of the precedent that this Court has with respect to interpreting these Commonwealth-type arguments. One is, I apologize if I butchered the name of this, Villarín-Garaña, 553 F. 2nd. 723. Is this in your brief? Yes, Your Honor. And that case addressed a civil rights statute, Section 242, that punishes anyone who violates civil rights of any inhabitant of a state, territory, or district. And the defendant in that case argued that because Puerto Rico is a commonwealth, and Section 245, which addresses commonwealths, exists, that the statute didn't apply to Puerto Rico. This Court rejected that argument based on the idea that Congress would not approach the statute in such a subtle way, overruling precedent that existed, and understanding of a statute that has existed for decades, and that there was no congressional intent. Well, that case, I think you make a point that that case, as I read it, supports the notion that the FRA does apply irrespective of whether Puerto Rico's status as a state or territory. But it doesn't say that they apply the way they did before 1952. And so it seems to me your argument pushes back quite heavily on the fundamental purposes of the 1952 legislation that clearly fundamentally changed Congress's approach to how Puerto Rico would govern events within the island of Puerto Rico. Well, no, Your Honor. As this Court recently held in Puerto Rico v. Sanchez Valle, Puerto Rico, and albeit that is a constitutional case dealing with the Double Jeopardy Clause, Puerto Rico is constitutionally a territory, and Congress has plenary authority to regulate conduct. Well, for that reason, in that case, I've rarely seen the Court bend over backwards so much to say, this is very limited, this is a really unique situation, the Double Jeopardy Clause, it's unique because it requires us to go back to the origin of the power. I mean, they went out of their way to tell us not to presumptively apply that approach in other areas. Well, yes, Your Honor, but it also rejected the arguments of the dissent, which were that the establishment of the Puerto Rico Constitution, although it has significant social ramifications for Puerto Rico, does not change Puerto Rico's status. And many of the same arguments that were pursued in the dissent in Sanchez Valle. It doesn't change its constitutional status. I'm sorry, Your Honor? It doesn't change its constitutional status. No, Your Honor. But the question is whether this legislation alters, for some purposes, its status relative to the federal government. Yes, Your Honor, and the position of the government is that, going back to shell code, the interpretive principles of that case still guide the Court here, that she needs to look at the character and aim of the act. Yeah, but it seems to me there's a big difference between cases where, for purposes of the statute, it doesn't really make any difference whether Puerto Rico is treated as a state or a territory. The application of the statute would be the same. But there's a limited class of cases where it does make a difference, whether it's treated as a state or a territory. And the Mann Act is one of those, because if this were a state, it wouldn't apply to intrastate activity, right? So there are not very many cases that involve that kind of situation. Cordova is another one. There are a couple of others. But why shouldn't Puerto Rico be able to make its own policy with respect to sex trafficking the way it was able to make its own policy with respect to the antitrust laws under Cordova? Because that's contrary to Congress's stated intent in 1910, and the Supreme Court and this Court have both held that Congress's intent was explicit, and Congress has never rejected that intent or modified that intent. And that is not something that was recognized in Cordova. There was no unequivocal intent. All the Court said in Cordova about the Sherman Act was that it ceases to apply locally when it – excuse me, Your Honors, may I finish that thought? All the Court said in Cordova was that the Sherman Act ceases to apply locally once territories become states. It did not identify an explicit stated intent on behalf of Congress as occurs in the Mann Act. Good morning, Your Honors. May it please the Court. I am Ellie Maranzini, Assistant Federal Public Defender, on behalf of Mr. Maldonado Burgos. The Supreme Court in Sanchez Valle recently stated that Cordova – Could I suggest a distinction of Cordova to you and ask you what you think of it? Sure, Your Honor. And the distinction is this, that in Cordova we're dealing with antitrust laws where states and the federal government may have different approaches to antitrust. As Judge Cotta mentioned earlier, there are quite a few differences between state antitrust laws and federal antitrust laws. And under those circumstances, Cordova was saying, well, Puerto Rico, as a result of the 1952 legislation, ought to be able to make a choice as to what the antitrust laws should be in the intrastate or interterritory context. But that the Mann Act is different in that there really isn't any argument that Puerto Rico should be able to have its own policy with respect to sex trafficking. Puerto Rico and the federal government are on the same page about that, that sex trafficking is illegal. And it's not a situation in which applying the Mann Act would interfere with a local judgment as to what the law should be in contrast to the antitrust situation where the state or territory may have a different judgment about what the antitrust rule should be. Do you understand what I'm saying? I do, and my answer to that point is twofold. First, we're not saying that the application of the Mann Act excludes the prosecution of trafficking in Puerto Rico. This case doesn't have anything to do with trafficking. The transportation in this case occurred wholly within Puerto Rico. Had there been any attempt to transport an individual in or out of Puerto Rico or in foreign commerce, we would not be arguing that the act does not apply. Second, I think that the similarities between the structure of the Mann Act are actually strong with regard to the Sherman Act in that Section 1 and Section 3 of the Sherman Act, 1 purports to criminalize interstate conduct, whereas Section 3 purports to criminalize interterritorial conduct. So the jurisdictional hook is more robust in the interterritorial context, which is similar to the way that the Mann Act is interpreted. The Mann Act only penalizes transportation among states, not wholly within states, whereas if we are to determine that Puerto Rico is a territory, wholly interterritorial transportation would be criminalized. Do you agree that Puerto Rico and the federal government don't have a different policy with respect to sex trafficking? I can't speak to whether or not they have different policy. I can speak to the fact that Puerto Rico does have robust criminal laws that penalize the exact conduct and did penalize Mr. Maldonado for the conduct in this case. In fact, he's facing a sentence that is higher than what he would be facing if he were prosecuted under the Mann Act. So I can speak to their local criminalization of sexual assault and prostitution, but not necessarily to their approach to trafficking. Well, don't the various states and potentially some of the territories have slightly different approaches over time to, for example, age of consent or whether it recognizes a common law marriage or not? And don't those tend to operate on the periphery of the Mann Act in determining what defenses are or are not available? Yes, Your Honor, and there's no question, as we agree with the government, and there's no question as to this case that Section 2423 of the Mann Act, which criminalizes trafficking of minors defined federally as under the age of 18, applies to conduct wholly within Puerto Rico. We're only asking whether the conduct in this case, which is transportation of an adult wholly within the confines of Puerto Rico, is a crime under the Mann Act. Well, are you drawing the distinction between minor versus adult or between an extra-jurisdictional movement from a state to Puerto Rico as opposed to totally within Puerto Rico? Both distinctions exist and are relevant. The holding that we're asking for in this case, the decision of the district court that we purport was correct in this case, has a very limited impact on the enforcement of the Mann Act. It does not remove Section 2423's ability to criminalize the trafficking of minors, and it does not impact any sort of actual trafficking activity that has an interstate component with regards to the travel, which is exactly how it is penalized in the 50 states. And the question that this court has to answer, which the justices have correctly framed, comes from Cordova, which was subsequently discussed with approval in Jusino in 2000, which is if the framers of the Mann Act were aware of the structural changes to Puerto Rico's government since the 1950s, would they intend Section 2421, which does not mention or comprehend specifically Puerto Rico, to be a state or territory? And the district court answered that question correctly in determining that it was a state, and the framework provided by Cordova, we believe, is binding on this court. Is there anything that you can point to that tells us two potential hypotheticals for the legislative state of mind in passing this act originally? One is Congress wants to cover this activity wherever it can possibly get at it, but shoot, it can't get at it inside the states because there's no interstate commerce. Or Congress doesn't want to take away from the states their ability to recognize certain activity, but when it gets to be interstate, we're sure as heck going to regulate it. Is there anything that you can point us to that would shed any light on whether one or the other of those sort of purposes was operative at the time the statute was originally passed? In 1910? Yeah. Well, I don't believe the legislative record is complete with regard to that point, but we do know that the original language of the act defined territory to mean the District of Alaska, the insular possessions of the United States, and the Panama Canal Zone. There's no dispute that when Alaska became a state in 1959 that it was no longer viewed as a territory under the purposes of the act, and our position is that the same change would take effect when Puerto Rico was elevated to a self-governing commonwealth status. And our position is that the default rule under the Savings Clause of the Federal Relations Act, which states that the statutory laws of the United States, not locally inapplicable, shall have the same force and effect in Puerto Rico as in the United States, that that default rule, as explained in Jusino and as applied in Córdoba and Acosta, is that absent specific language in the statute directing otherwise, or absent strong evidence in the legislative record, whether when the act was originally passed or when the act was amended in 1998, we must treat Puerto Rico as a state for these purposes. And that is what the First Circuit did in Córdoba, even though Shell had previously held that Puerto Rico was a territory under Section 3 of the act, and that is what the court must do in this case. Because while the government wants us to disregard the exceptional status that Puerto Rico has obtained since the 1950s, the many precedents of this court and of the Supreme Court indicate that we just can't do that. We cannot ignore the realities. The Supreme Court in Sanchez Valle, as Judge Cayeta mentioned, bent over backwards to emphasize the significance of those changes, and they indicated that if they had been able to consider the indicia of sovereignty in another context, it would have required the opposite result from their double jeopardy holding. And we also have to look at the 1998 amendments. Both Section 24, 21, and 23 were amended in 1998. 23, the term Commonwealth, was added to it. It was also added to the Section 26. And while 21 was amended to increase the statutory maximum and to add for an attempt provision, the word Commonwealth was not added to that. And it's a principle canon of statutory interpretation that words, just different words within a same statutory scheme, have meaning. We cannot assume that Congress negligently or forgetfully just failed to, for no reason at all, to include the word Commonwealth in 21, whereas they explicitly did so in 23. And two judges actually in the District of Puerto Rico, Judge Perez Jimenez and Fuste, have held that 23 was amended specifically so that it would apply to intra-Puerto Rico transportation. Were those amendments in the same bill? I believe they were, Your Honor. And they were passed without discussion. As I mentioned, the holding that we're asking for, we're not asking for a repeal of the statute as it applies to Puerto Rico. And so in that way, this case is distinguishable from some of the precedents that the government cites. Those precedents held that federal laws continue to apply to Puerto Rico after it became a Commonwealth. And we purport that the law does continue to apply to Puerto Rico, albeit as if Puerto Rico were a state as opposed to if Puerto Rico were a territory. And the significance of the changes that have occurred in Puerto Rico's history from the Elective Governor Act of 1947 to the Constitution in 1952 to the changes to the federal court system in the 60s require the court to find that CRESPO and JAREVO and the pre-Commonwealth cases no longer have sway over the question of whether Puerto Rico is a state or territory for this particular act. This holding would not open the court up to endless amounts of challenges to whether Puerto Rico is contemplated by every statute that fails to name it. This act is a limited one. 21 is a limited one. There are only four cases in the District of Puerto Rico since 1990 under that act. There are zero in Guam, zero in the Virgin Islands, and only a couple in the Mariana Islands which involve foreign transportation of individuals for the purposes of prostitution. So the context that the court is considering in this case is very limited. And a holding would not have widespread ripple effects throughout other statutory schemes. Is the reason that someone in the defendant's position here is prosecuted under the Mann Act rather than under Puerto Rican laws because the penalties under the Mann Act are greater? Is that correct? No, Your Honor. And in fact, Mr. Maldonado was prosecuted both under the Mann Act originally, which was dismissed by the District Court, and he was subsequently prosecuted under Puerto Rico law. And as I mentioned, he's facing a penalty in Puerto Rico court. He's pending sentencing. He's facing a penalty that is greater than the statutory maximum under the Mann Act. So he was found guilty and adjudicated of the offense that the indictment in this case makes specific reference to. Is his sentencing being held up at all because of this case? I don't believe so. He has pled guilty and he's scheduled for sentencing, I believe, in January. Is there any double jeopardy issue now as a result of that? That's not part of our briefing in this case. I imagine that it might arise if this case were to end up back in the District Court, but I'm not in a position to discuss it. We could submit a Rule 28J letter if the court feels it is important for the determination here. So in sum, the District Court, in determining that Puerto Rico should be considered a state under 2421, was correct for three reasons. First, because there's no reason either in the statute or in the legislative record of the Mann Act that would warrant the court treating Puerto Rico differently from a state for this specific statute. Second, the magnitude of change in Puerto Rico's status renders the court's prior decisions interpreting the act inapplicable. And third, Congress's 1998 amendments make it clear that 2421, as opposed to its sister statute, 2423, is not intended to apply to transportation that occurs wholly within Puerto Rico. Jusino indicated that the default rule under the Savings Clause was that we treat Puerto Rico similarly to the states, unless otherwise indicated. And to overcome that default rule, we would need specific evidence of policy reasons. In that case, the court found that the record offered nothing that would lead an objective observer to conclude that Congress meant either to encroach more extensively upon Puerto Rico's autonomy than upon the states, or to give Commonwealth employees more rights than their counterparts in the 50 states. Similarly, in Córdoba, the court found that there is no reason of policy discernible in the Sherman Act for treating Puerto Rico differently given a general congressional intent to grant Puerto Rico state-like autonomy. The reasoning from those two decisions applies with full force here. There's nothing in the legislative record that the government can point to that would warrant treating Puerto Rico differently, in this case, than from a state. The decision of the Supreme Court in the United States v. Beach sheds no additional light on that question, because as we can see, the original text of the statute specifically mentioned the District of Columbia and not Puerto Rico. So, in sum, would the framers, in light of the magnitude of changes to Puerto Rico's status, consider the question differently than they did in Crespo in 1945? The answer is yes, that they would find that Puerto Rico is intended to be a state under 2421 of the Mann Act. Thank you. I don't believe you reserved.